1
2
3
4
5
6
7 **UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
8

9 CAMMILLE SORRELL,                    Case No. 17-cv-1573 DMS (NLS)

10        Plaintiff,

11                                      **ORDER GRANTING**
                                        **DEFENDANT'S MOTION FOR**
12        v.                            **SUMMARY JUDGMENT**

13 ROBERT WILKIE, SECRETARY
   OF VETERANS AFFAIRS,
14
15        Defendant.
16

17        Pending before the Court is Defendant Robert Wilkie ("VA")'s motion for

18 summary judgment.  Plaintiff Cammille Sorrell filed an opposition, and Defendant

19 filed a reply.  For the reasons set forth below, Defendant's motion is granted.

20                                   **I.**

21                              **BACKGROUND**

22        Plaintiff is an African-American woman who has been employed by the U.S.

23 Department of Veterans Affairs ("VA") since 2010.  (FAC ¶ 5; Declaration of

24 Klaudia Barsi ("Barsi Decl.") ¶ 4, ECF No. 16.)  She works as a Rating Veterans

25 Service Representative ("RVSR"), and her duties include making final rating

26 decisions on veterans' disability claims.  (Barsi Decl. ¶ 4.)  Plaintiff has consistently

27 received either "exceptional" or "fully successful" marks on her performance

28 reviews.  (Performance Reviews, ECF No. 18-20.)  She has also received regular

pay raises and promotions within her position as an RSVR, from GS 9-1 to GS 12-4. (Barsi Decl. ¶ 5.) Plaintiff applied for the positions of Assistant Coach[1] and Decision Review Officer,[2] but she was not selected for either position. (FAC ¶¶ 7, 12; Barsi Decl. ¶ 8.)

On July 10, 2018, Plaintiff filed a FAC against the VA pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) *et seq.* Plaintiff alleges discrimination based on her race and/or gender, retaliation, and harassment[3] for (1) being "wrongfully denied" promotions to the Decision Review Officer and Assistant Coach positions, and (2) for disparate scrutiny of her work by the VA's quality review specialists, which led to errors found in her work. (FAC ¶¶ 7–10, 12–14; Deposition of Cammille Sorrell ("Sorrell Dep.") at 170:16–171:5, ECF No. 16-20.)

Since 2010, Plaintiff has initiated six EEO claims against the VA, including a 2014 complaint challenging a non-selection for an Assistant Coach position and a 2015 complaint challenging a non-selection for a Decision Review Officer position. (Barsi Decl. ¶ 8.) However, Plaintiff's FAC is based on her October 28, 2016 EEO complaint ("2016 complaint") and January 9, 2018 EEO complaint ("2018 complaint"). (FAC ¶¶ 11, 14.)

First, Plaintiff's 2016 complaint alleged race and gender discrimination, retaliation, and hostile work environment against the VA for a variety of incidents, including failure to inform Plaintiff about a colleague's Merit System Protection Board hearing, rescheduling of interviews, and for adverse quality reviews. (*See* 2016 EEO Complaint, ECF No. 16-14; 2016 Investigative Report, ECF No. 16-18.)

---

[1] Plaintiff refers to the positions of Assistant Coach and Supervisory Veterans Service Representative interchangeably. (*See* Pl.'s Mem. Of P. & A. in Opp'n to Def.'s Mot. ("Pl's Opp'n") at 1.)

[2] Plaintiff refers to the positions of Quality Reviewer and Decision Review Officer interchangeably. (*See* Sorrell Dep. 60:11–14.)

[3] Plaintiff has stipulated to withdraw her third cause of action for harassment, which the Court summarily dismisses. (*See* Pl's Opp'n at 12.)

Based on the charges in Plaintiff's 2016 complaint, Plaintiff contends that the VA engaged in discriminatory and retaliatory conduct evidenced by an incident in 2016 between a supervisor of the quality review team, Antonio Morabito, and a quality review specialist, Eduardo Ortiz.

By VA policy, all RVSRs have five claims randomly selected for review every month, which are then reviewed by quality review specialists. (Declaration of Amanda Matthews ("Matthews Decl.") ¶ 4, ECF No. 16.) In July 2016, Mr. Morabito assigned Mr. Ortiz to review Plaintiff's five randomly selected claims. (Declaration of Eduardo Ortiz ("Ortiz Decl.") ¶¶ 3–4, ECF No. 16-9.) While giving the assignment, Mr. Morabito "advised [Mr. Ortiz] to be very careful in [his] dealings with [Plaintiff] because she has a reputation for putting people on report or accusing people of some form of harassment." (*Id.* ¶ 4.) After reviewing Plaintiff's work, Mr. Ortiz found errors in two of Plaintiff's claims, which were confirmed through a peer review process. (*Id.* ¶ 6.)

Second, Plaintiff's 2018 complaint alleged race and gender discrimination and retaliation for the VA's failure to promote her to an Assistant Coach position—job number 377-17-033-NR10031013 ("2017 Assistant Coach position"). (2018 EEO Complaint, ECF No. 16-17.) The panel members in charge of selecting the 2017 Assistant Coach positions were Stacey Bonnett and Marvin Rivas. (Barsi Decl. ¶ 11; Assistant Coach Ratings at 17, ECF No. 16-19.) The panelists reviewed the applicants' resumes, interviews, and written exercises, and gave numerical scores based on each category. (Deposition of Kristina Morabito ("Morabito Dep.") 57:18–58, ECF No. 18-24; Declaration of Debra Roybal ("Roybal Decl.") ¶¶ 5–9, ECF No. 16-11.) Performance reviews were not a factor in the scoring criteria. *See id.* Plaintiff received one of the lowest scores out of the twelve applicants. (Assistant Coach Ratings at 17.) The eight individuals with the highest scores were selected for the 2017 Assistant Coach positions. (*Id.*; Barsi Decl. ¶ 12.) Their race and gender were: "(1) Hispanic/male; (2) Caucasian/female; (3) African-

American/male; (4) African-American/female; (5) African-American/female; (6) Mixed-race/male; (7) Pacific-Islander/female; (8) Caucasian/female." (Barsi Decl. ¶ 12.)

After Plaintiff filed her 2018 complaint, the VA's Office of Resolution Management ("ORM") had 180 days to investigate her non-selection claim, by July 8, 2018. (Declaration of Lisa Holliday ("Holliday Decl.") ¶¶ 3–6, ECF No. 16-5.) Due to ORM's heavy workload, ORM sent Plaintiff an email requesting a 90-day extension. (*Id.*) Plaintiff voluntarily agreed to the extension. (*Id.*) Two days into the 90-day investigation period, Plaintiff filed her FAC, which included her non-selection claim for the 2017 Assistant Coach position. (*See* FAC.)

## II.

## LEGAL STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific

facts showing there is a genuine issue for trial. *Id.*; *see also Butler v. San Diego Dist. Atty's Off.*, 370 F.3d 956, 958 (9th Cir. 2004) (stating if defendant produces enough evidence to require plaintiff to go beyond pleadings, plaintiff must counter by producing evidence of his own). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III.

## DISCUSSION

### A.     Exhaustion of Administrative Remedies

Plaintiff alleges discrimination and retaliation pursuant to Title VII. In order to bring a Title VII claim before a district court, a plaintiff must first exhaust her administrative remedies. *See* 42 U.S.C. § 2000e–16(c); *Jasch v. Potter*, 302 F.3d 1092, 1094 (9th Cir. 2002) (citing *Greenlaw v. Garrett*, 59 F.3d 994, 997 (9th Cir. 1995)).

Exhaustion of administrative remedies requires that the plaintiff "file a timely charge with the EEOC, thereby allowing the agency time to investigate the charge." *Lyons v. England*, 307 F.3d 1092, 1104 (9th Cir. 2002) (citing 42 U.S.C. § 2000e–5(b)). Specifically, the plaintiff "must consult a[n EEO] Counselor prior to filing a complaint in order to try to informally resolve the matter" and "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory." *Id.* at 1104 (citing 29 C.F.R. § 1614.105(a)). Failure to comply with the 45-day requirement is fatal to the plaintiff's discrimination claim. *Id.* If the plaintiff is unable to informally resolve the issue, she may file a formal complaint with the agency. 29 C.F.R. § 1614.106. The agency is then "required to conduct an impartial and appropriate investigation of the complaint within 180 days of the filing of the complaint unless the parties agree in writing to extend the time period." 29 C.F.R. § 1614.106(e)(2).

Additionally, the "jurisdictional scope" of the plaintiff's claims before a district court depends on the scope of the EEOC charge and investigation. *Leong v. Potter,* 347 F.3d 1117, 1122 (9th Cir. 2003) (citations omitted). A court may not consider incidents of discrimination that are not included in an EEOC charge, unless they are "like or reasonably related to the allegations made before the EEOC, as well as … within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations." *Lyons*, 307 F.3d at 1104 (citing *Green v. Los Angeles County Superintendent of Sch.,* 883 F.2d 1472, 1475–76 (9th Cir. 1989); *Leong*, 347 F.3d at 1122 (citing *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir.1990)). However, even if the incidents are "related to acts" alleged in timely filed charges, they are not actionable if time barred. *Lyons*, F.3d at 1105–06. ("[D]iscrete discriminatory acts [such as failure to promote] are not actionable if time barred, even when they are related to acts alleged in timely filed charges.")

Defendant requests the Court to summarily dismiss Plaintiff's non-selection claims in both her 2016 and 2018 complaints on grounds that Plaintiff failed to exhaust her administrative remedies.

### 1. October 28, 2016 EEO Complaint

Plaintiff does not dispute Defendant's contention that Plaintiff's 2016 complaint did not include any non-selection claims, and that even if it did, it would be time barred. Plaintiff's 2016 complaint alleged, in relevant part, that the VA attempted "to deter [Plaintiff's] pursuit of upward mobility" by rescheduling her interviews for the Decision Review Officer and Assistant Coach positions. (*See* 2016 EEO Complaint; 2016 Investigative Report.) The Court does not need to address whether Plaintiff's claims of non-selection are within the scope of her EEOC charges because they were not timely exhausted.

Plaintiff initially contacted an EEO counselor on August 22, 2016. (Barsi Decl. ¶ 8; ORM Notice, ECF No. 16-15.) Under the 45-day requirement, the discriminatory acts must have occurred no later than July 8, 2016. *See* 29 C.F.R.

§ 1614.105(a). Because the relevant incidents occurred between February 13, 2015 and September 24, 2015, (*See* 2016 EEO Complaint), Plaintiff failed to timely challenge any non-selection claims in her 2016 complaint. *See Lyons*, F.3d at 1105–06 ("Each incident of discrimination constitutes a separate actionable unlawful employment practice" and thus "the statute of limitations period will begin to run for each individual claim from the date on which the underlying act occurs.") (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–14 (2002)). In fact, on January 16, 2016, Plaintiff filed a separate EEO complaint challenging her non-selection for the Decision Review Officer position, which she voluntarily withdrew. (Barsi Decl. ¶ 8; 2016 EEO Complaint at 2.) *See, e.g., Vinieratos v. U.S., Dept. of Air Force Through Aldridge*, 939 F.2d 762, 770 (9th Cir. 1991) (finding that voluntary withdrawal from the administrative process "prevents exhaustion and precludes judicial review"). Therefore, the Court summarily dismisses any claims of non-selection prior to July 8, 2016, including Plaintiff's non-selection claim for the Decision Review Officer position.

### 2. January 9, 2018 EEO Complaint

Second, Defendant argues that Plaintiff failed to timely exhaust her non-selection claim in her 2018 complaint because she prematurely filed her FAC before the ORM had a chance to complete its 90-day investigation.

Defendant properly relies on *Harris v. United States*, 919 F. Supp. 343 (S.D. Cal. 1996) for the proposition that a plaintiff's voluntary agreement to extend the 180-day investigation period by 90 days, "preclude[s] [her] from filing in federal court until the additional 90 day period expires." (Def.'s Mem. of P. & A. in Supp. of Mot. for Summ. J. ("Def's Mot.") at 10 (citing *Harris*, 919 F. Supp. 343 at 346.)) Contrary to Plaintiff's argument that this interpretation would deprive Plaintiff of her fundamental right to have her claims heard before a court of law, Plaintiff is not "relinquished [of] that right" by waiting an additional 90 days. (*See* Pl.'s Opp'n at 5.)

The rationale of the 90-day extension is "to permit an agency, with the consent of the complainant, to make a more thorough investigation into the merits of the complaint." *Harris*, 919 F. Supp. at 357. Allowing Plaintiff to bring her non-selection claim before the Court only two days into the 90-day extension "would be to strip the 90 day extension provided for in § 1614.108(e) of any of the contemplated benefit. The agency would not be able to rely on the 90-day extension and the participants would know that at any time between end of the 180-day period and the end of the additional 90 days 'an impatient complainant could take his claim to court and abort the administrative proceedings.'" *See id.* at 346 (citing *Vinieratos*, 939 F.2d at 771); *see also Brown v. Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726, 729 (9th Cir. 1984) (explaining that administrative exhaustion is necessary to "encourage informal conciliation of employment discrimination claims and foster voluntary compliance with Title VII") (citing *Ong v. Cleland*, 642 F.2d 316, 319 (9th Cir.1981)).

Having agreed to such an extension, Plaintiff was obligated to give the ORM 90 days to complete its investigation, before seeking relief in this Court. Therefore, the Court finds that Plaintiff failed to exhaust her administrative remedies as to her claim of non-selection for the 2017 Assistant Coach position. However, even if Plaintiff had properly exhausted her administrative remedies, she is unable to prevail on the merits.

## B. Discrimination

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); *Lyons*, 307 F.3d at 1103. The parties agree that this case is governed by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under the framework, a plaintiff must first establish a prima facie case of discrimination by showing that: (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably. *Chuang v. University of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802).

If the plaintiff makes the requisite prima facie showing, the burden shifts to the employer to articulate some "legitimate, nondiscriminatory reason for the challenged action." *Chuang*, 225 F.3d at 1123–24 (citing *McDonnell Douglas*, 411 U.S. at 802). If the employer meets the burden, the plaintiff must show that the articulated reason is pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

Plaintiff alleges that Defendant discriminated against her based on her race and/or gender by not promoting her to the Assistant Coach position, and by disparately scrutinizing her work. However, she is unable to establish a prima facie case of discrimination for either claim.

### 1. Non-Selection to the 2017 Assistant Coach Position

There is no dispute that Plaintiff is a member of a protected class as an African American and a female. *See McDonnell Douglas*, 411 U.S. at 802 (racial minorities are a protected class); *Hagans v. Andrus*, 651 F.2d 622, 625 (9th Cir. 1981) (females are a protected class in claims of gender discrimination). Plaintiff has demonstrated that she faced an adverse employment action by being denied a promotion to the Assistant Coach position, and that she was qualified for the position—evidenced by her positive performance reviews. (*See* Performance Reviews, ECF No. 18-20; Pl.'s Opp'n at 9–10.) However, Plaintiff has not met the minimal degree of proof required to demonstrate that similarly situated individuals outside her protected class were

treated more favorably. Plaintiff neither identifies who was hired for the Assistant Coach positions, nor demonstrates that those hired were outside of the protected class. *See, e.g.*, *Abram v. City and County of San Francisco*, 2008 WL 4462104, at *3 (N.D. Cal. 2008) (finding that a conclusory allegation that unidentified "white counterparts" were treated more favorably "does not rise to the level sufficient to create a material dispute of fact").

Even if Plaintiff was able to establish a prima facie case of racial or gender discrimination, Defendant has advanced a legitimate and nondiscriminatory reason for Plaintiff's non-selection. Plaintiff's scores based on her written application, interview, and writing exercises were lower than those who were hired. (*See* Assistant Coach Ratings at 17; Barsi Decl. ¶ 10; Roybal Decl. ¶ 9.)

Plaintiff contends Defendant's proffered reason is pretextual in that there is "direct evidence of Defendant's discriminatory animus" evidenced by Mr. Morabito's warning to Mr. Ortiz "about Plaintiff's penchant for filing claims." (Pl.'s Opp'n at 9; *see* Ortiz Decl. ¶ 4.) Direct evidence consists of "clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Coghlan*, 413 F.3d at 1095 (9th Cir. 2005). Though Mr. Morabito's statement may be relevant for Plaintiff's retaliation claim, it is not direct evidence of Defendant's discriminatory animus based on Plaintiff's race or gender. *Cf. Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998) (supervisor's comment that he "did not want to deal with another female" is direct evidence of discriminatory animus); *Cordova v. State Farm Ins.*, 124 F.3d 1145, 1149 (9th Cir. 1997) (employer's comment that an employee was a "dumb Mexican" is direct evidence of discriminatory animus).

Additionally, Plaintiff alleges the fact that performance reviews were not a factor in the scoring "is so very odd, so out of keeping with how the rest of the world conducts hiring and promotion so as to raise an inference of discriminatory intent from this fact alone." (Pl.'s Opp'n at 10–11; *see* Morabito Dep. 57:18–58:8). Again, Plaintiff does not point to any evidence that this hiring criteria, which was applied

to all applicants, raises an inference of discriminatory intent against African Americans or females. In fact, out of the eight individuals selected for the Assistant Coach position, three individuals were African American, and five were females. (Barsi Decl. ¶ 12.) Moreover, Plaintiff neither alleges nor points to any evidence that the panelists who determined her scores, Ms. Bonnett and Mr. Rivas, had intent to discriminate against her. Plaintiff's conclusory allegation that Defendant's hiring procedures were motivated by discriminatory intent does not create a triable issue of fact. *See Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir.1988) ("[C]onclusory allegations of alleged discrimination ... will not bar summary judgment."). Therefore, summary judgment is granted as to Plaintiff's discrimination claim for her non-select to the 2017 Assistant Coach position.

## 2. Disparate Scrutiny

Defendant argues that Plaintiff is unable to establish a prima facie case of discrimination as to her disparate scrutiny claim because the errors found in her work do not amount to an adverse employment action. Plaintiff does not refute this claim.

Despite the errors the quality reviewers found in Plaintiff's work, Plaintiff points out she consistently received either "exceptional" or "fully successful" marks on her performance reviews, including the section for "quality"—which according to Plaintiff is evidence of her "solid, established track record." (Performance Reviews, ECF No. 18-20; Pl.'s Opp'n at 9–10.) But Plaintiff does not point to any evidence that disparate scrutiny of her work amounted to an adverse employment action necessary to meet the second prong. *See Lyons*, 307 F.3d at 1118 (explaining that "mediocre evaluations" that are not "accompanied by meaningful change in work assignments" do not "rise to the level of an adverse employment action"); *Chuang*, 225 F.3d at 1126 (finding that even if the action is "irritating," it not an adverse employment action if it does not "materially affect the compensation, terms, conditions, or privileges of [the plaintiff]'s employment"). Moreover, Plaintiff is unable to show that similarly situated individuals outside her protected class were

treated more favorably. Plaintiff's conclusory allegation that "other similarly-situated, non-Black, non-female RSVRs were not subjected" to disparate scrutiny of their work is not sufficient to satisfy the fourth prong required to establish her prima facie case. *See Abram*, 2008 WL 4462104, at *3 (finding that a conclusory allegation that unidentified "white counterparts" were treated more favorably "does not rise to the level sufficient to create a material dispute of fact"). Therefore, summary judgment is granted as to Plaintiff's discrimination claim for disparate scrutiny.

### C. Retaliation

Title VII also prohibits an employer "from retaliating against an applicant for employment because the applicant has opposed any unlawful employment practice, or has made a charge, testified, assisted, or participated in an employment discrimination investigation or proceeding." *Lyons*, F.3d 1092 (citing *Lam v. Univ. of Hawai'i*, 40 F.3d 1551, 1558–59 (9th Cir. 1994)); *see* 42 U.S.C. § 2000e–3(a).

The *McDonnell Douglas* framework also applies to Title VII retaliation claims. *Surrell v. California Water Serv., Co.*, 518 F.3d 1097, 1105–06 (9th Cir. 2008). To establish a prima facie case of retaliation, the plaintiff must show that: (1) she engaged in a protected activity, (2) she was subjected to an adverse employment decision, and (3) that a causal link exists between plaintiff's activity and the employment decision. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994)). If established, the burden shifts to the defendant to set forth a legitimate, non-retaliatory reason for its actions, after which the plaintiff must produce evidence to show that the stated reasons were a pretext for retaliation. *Id.*; *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004).

Plaintiff alleges that Defendant retaliated against her by not promoting her to the Assistant Coach position, and by disparately scrutinizing her work.

/ / /

/ / /

## 1. Non-Selection to the 2017 Assistant Coach Position

There is no dispute that Plaintiff engaged in protected activities as a witness and a complainant to EEO proceedings, and that she suffered an adverse employment action by her failure to be promoted to the Assistant Coach position. However, Plaintiff is unable to establish a causal link between her engagement in protected EEO activity and her non-selection for the Assistant Coach position.

In order to establish a causal link, "the plaintiff must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity." *Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) (citing *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir.1982)).

Despite Mr. Morabito's warning to Mr. Ortiz about Plaintiff's engagement in protected activities, (*See* Ortiz Decl. ¶ 4), Plaintiff is unable to establish a causal link that Mr. Morabito or Mr. Ortiz had any involvement or influence in the selection of the Assistant Coach position at issue. *Cf. Bergene v. Salt River Project Agric. Improvement & Power Dist.,* 272 F.3d 1136, 1141 (9th Cir. 2001) ("Even if a manager was not the ultimate decisionmaker, that manager's retaliatory motive may be imputed … if the manager was involved in the [adverse employment] decision."); *Galdamez v. Potter,* 415 F.3d 1015, 1026 n.9 (9th Cir. 2005) ("Title VII may still be violated where the ultimate decision-maker, lacking individual discriminatory intent, takes an adverse employment action in reliance on factors affected by another decision-maker's discriminatory animus."). Plaintiff does not provide any evidence that those involved in selecting the Assistant Coach position, such as Ms. Bonnett and Mr. Rivas, were aware of Mr. Morabito's statement or of Plaintiff's engagement in protected activity.

However, even if Plaintiff had been able to raise a triable issue as to the existence of a causal link, she has not provided sufficient evidence to rebut Defendant's legitimate reasons for not selecting her for the Assistant Coach

position—for the reasons discussed above. Therefore, summary judgment is also warranted as to Plaintiff's claim of retaliation for non-selection.

### 2. Disparate Scrutiny

Defendant contends, and Plaintiff does not dispute, that Plaintiff's disparate scrutiny claim of retaliation fails for the same reason as her disparate scrutiny claim for discrimination. Although Mr. Morabito warned Mr. Ortiz about Plaintiff's engagement in protected activities, Plaintiff is unable to demonstrate that disparate scrutiny of her work amounted to an adverse employment action necessary to satisfy the second and third prongs. *See Lyons*, 307 F.3d at 1118 (2002) (explaining that "mediocre evaluations" that are not "accompanied by meaningful change in work assignments" do not "rise to the level of an adverse employment action"). Therefore, the Court finds that Plaintiff is unable to establish a prima facie case of retaliation for disparate scrutiny and summarily dismisses this claim.

## IV.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment. The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

Dated: December 14, 2018

Hon. Dana M. Sabraw
United States District Judge